IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| O'NEAL CONSTRUCTORS, LLC<br><br>Plaintiff,<br><br>vs.<br><br>ARENCIBIA ASSOCIATES, INC., E.BURRELL FISHER, P.E., D/B/A FISHER ENGINEERING, TRETTER MANUFACTURING COMPANY, JOHNSON CONTROLS, INC. AND KELVIN CRYOSYSTEMS D/B/A ARENCIBIA ASSOCIATES EQUIPMENT SERVICES, INC.<br><br>Defendants.<br><br>AND<br><br>ARENCIBIA ASSOCIATES, INC.<br><br>Third-Party Plaintiff,<br><br>vs.<br><br>O'NEAL, INC.<br><br>Third-Party Defendant. | Civil Action No.: 6-17-cv-508-TMC<br><br><br><br>**AMENDED COMPLAINT**<br><br>**(Jury Trial Demanded)** |

COMES NOW the Plaintiff, O'Neal Constructors, LLC ("**O'Neal**") alleging as follows:

**PARTIES, JURISDICTION AND VENUE**

1.      O'Neal is a South Carolina corporation which is authorized to conduct business and which conducts business in Greenville County, South Carolina.

2.      Upon information and belief, Defendant Arencibia Associates, Inc. ("**AAI**") is a corporation organized and existing under the laws of the State of Pennsylvania that, at all times

relevant to this action, was authorized to conduct business in the State of South Carolina and conducted business in Greenville County, South Carolina.

3.    Upon information and belief, Defendant, E. Burreell Fisher, P.E. d/b/a Fisher Engineering ("**Fisher**") is a licensed professional engineer residing in a state other than South Carolina and provided professional engineering services for the LNG Project that is the subject of this matter, located in Greenville, South Carolina.

4.    Upon information and belief, Defendant, Tretter Manufacturing Company ("**Tretter**") is a limited liability company organized and existing under the laws of the State of Pennsylvania. Tretter manufactured heat exchangers and other components as a sub-subcontractor to AAI for the LNG Project that is the subject of this action.

5.    Upon information and belief, Defendant, Johnson Controls, Inc. ("**JCI**") is a corporation organized and existing under the laws of the State of Wisconsin and regularly conducts business in South Carolina. JCI manufactured compressors and related equipment and provided certain startup and commissions services as a sub-subcontractor to AAI and AAESI for the LNG Project that is the subject of this action.

6.    Upon information and belief, Defendant, Kelvin Cryosystems, Inc. d/b/a Arencibia Associates Equipment Services, Inc. ("**AAESI**") is a corporation organized and existing under the laws of the State of Pennsylvania. Upon information and belief, AAESI provided certain equipment as a sub-subcontractor to AAI for the LNG Project that is the subject of this action.

7.    This action arises out of improvements to real property located in Greenville County, South Carolina as well as the performance of a contract in Greenville County, South Carolina.

8.      The Court has jurisdiction over the parties to this action and venue is proper in Greenville County.

## FACTUAL BACKGROUND

9.      O'Neal incorporates the allegations of Paragraphs 1 through 4 as if fully repeated herein.

10.     GE Power & Water (the "Owner") entered into a written contract with O'Neal relating to the design, and construction of a process to enable gas turbine testing using liquefied natural gas (the "LNG Project") at the Owner's manufacturing facility located in Greenville, South Carolina (the "Facility").  As set forth in said Contract, portions of the LNG Project were required to be designed by AAI, based upon AAI's purported technology and know how relating to the LNG process.

11.     On or about February 22, 2012 O'Neal entered into a Purchase Order No. 12002-P-002 with AAI (the "Contract") wherein AAI agreed to properly design, fabricate, test, procure, furnish, commission and deliver to the LNG Project certain systems and/or components of the LNG Project including, but not limited to:

       a.  LNG Peak Shaver;

       b.  LNG/LIN Liquefier Cold Box;

       c.  Liquefier Compressors;

       d.  Expander;

       e.  Liquid Heated Vaporizer;

       f.  Tanks TK1300A and 1300B;

       g.   Heat exchangers;

       h.  PSA Skid Nos. 1 and 2;

      i.   Related piping, piping systems, valves, transmitters, motors, flowmeters, analyzers, filters and associated parts to make that portion of the LNG Liquefier System as designed, procured, fabricated, tested and by AAI, safe and operational in accordance with the requirements of the Contract and applicable codes;

      j.   On-site direction for the installation of the above-listed systems and/or components;

      k.   A fully functional, code-compliant LNG Liquefier System.

Attached hereto as **Exhibit 1** is Attachment K to the Contract, which generally depicts the scope of services provided by AAI in connection with the LNG Project.

12.     In addition to the foregoing, AAI was obligated under the Contract to provide technical expertise, computer software, know how, design expertise and other services and data in accordance with the Owner's LNG Project scope and specifications. The scope of design, fabrication, procurement, testing, delivery and commissioning services, on-site direction, technical know-how and expertise required to be properly and timely provided by AAI pursuant to the Contract is referred to herein as the "**LNG Liquefier system**."

13.     Upon information and belief, AAI entered into sub-subcontract arrangements with Fisher, Tretter, JCI and AAESI (collectively referred to as "**AAI Subcontractors**") to perform components of AAI's scope of work set forth in the Contract relating to the LNG Project.

14.     Due to the proprietary nature of the technology, design and services provided by AAI pursuant to the Contract, O'Neal had only limited, general knowledge of AAI's process design details for the LNG Liquefier system.

15.     AAI was the process designer for the LNG Liquefier system and was the "designed agent" and/or "design agent" for that system.

16.     Pursuant to the Contract and/or as design agent for the LNG Liquefier system, AAI was obligated to, among other things, design, procure and furnish equipment and/or systems complying with all applicable codes including, but not limited to, ASME Section VIII.

17.     Pursuant to the Contract and/or as design agent for the LNG Liquefier System, AAI was obligated to, among other things, conduct inspections during equipment fabrication to ensure compliance with all applicable codes.

18.     Pursuant to the Contract and/or as design agent for the LNG Liquefier system AAI was obligated to provide oversight, management and coordination of all aspects of the design or fabrication of the LNG Liquefier system which it subcontracted to third parties.

19.     Numerous errors and omissions in the design services, designs, equipment design, equipment fabrication in the LNG Liquefier system provided by AAI and the AAI Subcontractors have been determined to exist, including, but not limited to, the following:

   a.  AAI and/or the AAI Subcontractors failing to design, specify and/or provide compressors complying with applicable requirements of the Contract;

   b.  AAI and/or the AAI Subcontractors failing to properly identify deficiencies in compressors, compressor components, mechanical seals, control systems, oil coolers and related equipment specified, designed, procured, tested, commissioned and furnished by AAI and/or the AAI Subcontractors;

   c.  AAI and/or the AAI Subcontractors failing to properly repair the above-listed deficiencies existing in compressors furnished by AAI and/or the AAI Subcontractors;

d.  AAI and/or the AAI Subcontractors failing to complete and/or abandoning its obligations under the Contract and as design agent relating to the provision of compressors and related components fully complying with the requirements of the Contract and/or applicable codes;

e.  AAI and/or the AAI Subcontractors failing to design, specify, procure and/or furnish heat exchangers complying with requirements of the Contract and/or applicable codes;

f.  AAI  and/or the AAI Subcontractors failing to undertake reasonable, customary and necessary quality control measures to assure that heat exchangers designed, specified, procured and furnished by AAI and/or the AAI Subcontractors included proper and adequate welds, were properly constructed and/or fabricated and complied with applicable code requirements;

g.  AAI and/or the AAI Subcontractors failing to conduct inspections of equipment during fabrication to ensure code compliance;

h.  AAI and/or the AAI Subcontractors failing to properly determine the design loading requirements needed to determine the maximum allowable working pressure ("MAWP") for heat exchangers, to identify all over-pressure scenarios together with the method of over-pressure protection used to mitigate each scenario and to properly design over-pressure protection for heat exchangers complying with the requirements of the Contract and/or applicable codes;

i.  AAI and/or the AAI Subcontractors failing to properly and adequately design heat exchangers in compliance with applicable industry standards for corrosion allowance and customary pressure drops;

j.  AAI and/or the AAI Subcontractors failing to provide equipment with pressure drops as represented during the design of said equipment;

k.  AAI and/or the AAI Subcontractors failing to properly specify materials of construction for heat exchangers;

l.  AAI and/or the AAI Subcontractors failing to accurately represent the operational and/or performance capabilities of heat exchangers designed, procured and furnished by AA and/or the AAI Subcontractors I;

m.  AAI and/or the AAI Subcontractors failing to properly design, engineer, procure and furnish properly sized equipment and/or systems including, but not limited to, various pumps, valves and other parts furnished to the LNG Project;

n.  AAI and/or the AAI Subcontractors failing to properly design and specify safety relief system(s) on certain equipment provided by AAI and/or the AAI Subcontractors to comply with applicable requirements of the Contract and applicable code requirements;

o.  AAI and/or the AAI Subcontractors failing to design and specify safety relief system(s) on certain equipment provided by AAI and/or the AAI Subcontractors so that the requirements of ASME Code Section VIII and UG-140 requirements were met;

p.  AAI and/or the AAI Subcontractors failing to properly design, specify, engineer, procure and furnish equipment and/or systems complying with applicable life/safety requirements;

q.  AAI failing to fully and properly perform its obligations under the Contract relating to the provision of an integrated control system;

---

r.  Otherwise AAI and/or the AAI Subcontractors failing to fully and properly provide engineering, design, procurement, testing fabrication technical expertise and know how, and on-site management services in accordance with the requirements of the Contract, applicable codes and industry standards.

20.   As the LNG Project was being designed, procured and constructed, AAI misrepresented the nature, cause, source and/or reason for errors and omissions observed in the LNG Liquefier system, causing O'Neal to expend considerable, unwarranted and unnecessary time, expense, engineering-related costs.

21.   AAI's misrepresentation regarding the nature, cause, source and/or reason for errors and omissions observed in the LNG Liquefier system has detrimentally impacted O'Neal's relationship with the Owner, causing the Owner to refuse to enter into contracts for additional work with O'Neal.

22.   As a direct and proximate result of the errors and omissions, design deficiencies, design defects, misrepresentations, violations of applicable codes and failures to perform in accordance with the Contract and applicable industry standards, O'Neal has been substantially delayed in the completion of the LNG Project resulting in substantial cost, expense and damage to O'Neal for which AAI is responsible.

23.   As a direct and proximate result of AAI's misrepresentations relating to its errors and omissions, design deficiencies, design defects, violations of applicable codes and failures to perform in accordance with industry standards, O'Neal has expended considerable, unwarranted and unnecessary time, expense and engineering related costs.

24.    As a direct and proximate result of LNG Project delays and design errors and omissions, for which AAI is responsible, O'Neal has been required to incur substantial costs to expedite shipping of equipment provided by AAI, for which AAI is liable to O'Neal.

25.    As a direct and proximate result of the above-listed errors and omissions, design deficiencies, design defects, violations of applicable codes, misrepresentations, delays and failures to perform in accordance with industry standards, the Owner has withheld from payment to O'Neal certain amounts, for which AAI is liable to O'Neal.

26.    Furthermore, if not addressed by O'Neal, many of AAI's design errors and omissions could have prevented substantial life/safety threats and which could have resulted in substantial loss including, but not limited to, personal injury, loss of use and/or damage to the LNG Project or other property located at the Facility.

27.    AAI's violations of applicable codes including, but not limited to ASME Section VII, constitute negligence per se.

28.    In addition to the foregoing, as a direct and proximate result and consequence of the negligence, carelessness, recklessness, gross negligence, willfulness and wantonness of AAI and/or the AAI Subcontractors:

　　　a.  Portions of the LNG Project have been defectively designed and furnished, requiring substantial and ongoing costs being incurred by O'Neal to address, modify and/or correct;

　　　b.  O'Neal has incurred substantial costs and damages in assessing, addressing, modifying and/or correcting said deficiencies; and

c.  At the direction of the Owner, O'Neal has been required to undertake substantial efforts to assess, correct and/or remove AAI's and/or the AAI Subcontractors' defective and improperly designed equipment and/or systems.

29.    As a result of the above referenced errors and omissions by AAI and/or the AAI Subcontractors, O'Neal has expended and will be required in the future to expend additional and substantial amounts of money for:

a.  Costs to investigate the errors, omissions, defects and deficiencies in AAI's and/or the AAI Subcontractors' work;

b.  Costs to develop and/or design appropriate repairs and repair scopes;

c.  Costs of assessing, repairing and replacing defective, deficient, unsuitable and improperly designed components of the LNG Project provided by AAI and/or the AAI Subcontractors;

d.  Damages associated with delays in completion of the LNG Project due to errors, omissions, defects and deficiencies in AAI's and/or the AAI Subcontractors' services and equipment provided in connection with the LNG Project;

e.  Damages associated with expediting costs for schedule acceleration due to defective designs and/or equipment being furnished by AAI and the AAI Subcontractors';

f.  Damages associated with loss of work with the Owner; and

g.  Such other damages as may result from the conduct, acts and/or omissions of AAI and/or the AAI Subcontractors.

30.    O'Neal has also incurred and/or may be required to incur in the future, additional damages relating to the design, procurement, installation and/or construction of equipment and/or

systems to replace equipment and/or systems improperly designed, procured and/or furnished by AAI and/or the AAI Subcontractors.

31.    Upon information and belief, there may be other latent defects in the LNG Liquefier system that have yet to be uncovered and can only be uncovered through additional investigation, engineering analysis and/or testing.

32.    O'Neal has made repeated demands upon AAI to remedy the above-listed errors, omissions, defects and deficiencies in the LNG Liquefier system.

33.    Despite such notices, demands and multiple opportunities to cure, AAI has failed and refused to correct its errors, omissions, defects and deficiencies in its portion of the LNG Liquefier system.

**FOR THE FIRST CASE OF ACTION**
*(Negligence/Gross Negligence – All Defendants)*

34.    O'Neal incorporates the allegations of Paragraphs 1 through 33 above, as if fully repeated herein.

35.    AAI, Fisher and AAESI owed a duty to O'Neal to perform design services consistent with industry standards and in accordance with the standards required of a reasonably competent engineer.

36.    AAI, Tretter, JCI and AAESI owed a duty to O'Neal to furnish equipment to the LNG Project consistent with industry standards and in accordance with the standards required of a reasonably competent equipment manufacturer.

37.    AAI and the AAI Subcontractors breached their duties and were negligent, grossly negligent, willful and/or wanton in numerous respects including, but not limited to, the following:

      a.    AAI and/or the AAI Subcontractors failing to design, specify and/or provide compressors complying with applicable requirements of the Contract;

b. AAI and/or the AAI Subcontractors failing to properly identify deficiencies in compressors, compressor components, mechanical seals, control systems, oil coolers and related equipment specified, designed, procured, tested, commissioned and furnished by AAI and/or the AAI Subcontractors;

c. AAI and/or the AAI Subcontractors failing to properly repair the above-listed deficiencies existing in compressors furnished by AAI and/or the AAI Subcontractors;

d. AAI and/or the AAI Subcontractors failing to complete and/or abandoning its obligations under the Contract and as design agent relating to the provision of compressors and related components fully complying with the requirements of the Contract and/or applicable codes;

e. AAI and/or the AAI Subcontractors failing to design, specify, procure and/or furnish heat exchangers complying with requirements of the Contract and/or applicable codes;

f. AAI and/or the AAI Subcontractors failing to undertake reasonable, customary and necessary quality control measures to assure that heat exchangers designed, specified, procured and furnished by AAI and/or the AAI Subcontractors included proper and adequate welds, were properly constructed and/or fabricated and complied with applicable code requirements;

g. AAI and/or the AAI Subcontractors failing to conduct inspections of equipment during fabrication to ensure code compliance;

h. AAI and/or the AAI Subcontractors failing to properly determine the design loading requirements needed to determine the maximum allowable working

pressure ("MAWP") for heat exchangers, to identify all over-pressure scenarios together with the method of over-pressure protection used to mitigate each scenario and to properly design over-pressure protection for heat exchangers complying with the requirements of the Contract and/or applicable codes;

i.  AAI and/or the AAI Subcontractors failing to properly and adequately design heat exchangers in compliance with applicable industry standards for corrosion allowance and customary pressure drops;

j.  AAI and/or the AAI Subcontractors failing to provide equipment with pressure drops as represented during the design of said equipment;

k.  AAI and/or the AAI Subcontractors failing to properly specify materials of construction for heat exchangers;

l.  AAI and/or the AAI Subcontractors failing to accurately represent the operational and/or performance capabilities of heat exchangers designed, procured and furnished by AAI and/or the AAI Subcontractors;

m.  AAI and/or the AAI Subcontractors failing to properly design, engineer, procure and furnish properly sized equipment and/or systems including, but not limited to, various pumps, valves and other parts furnished to the LNG Project;

n.  AAI and/or the AAI Subcontractors failing to properly design and specify safety relief system(s) on certain equipment provided by AAI and/or the AAI Subcontractors to comply with applicable requirements of the Contract and applicable code requirements;

o.  AAI and/or the AAI Subcontractors failing to design and specify safety relief system(s) on certain equipment provided by AAI and/or the AAI

Subcontractors so that the requirements of ASME Code Section VIII and UG-140 requirements were met;

p.  AAI and/or the AAI Subcontractors failing to properly design, specify, engineer, procure and furnish equipment and/or systems complying with applicable life/safety requirements;

q.  AAI and/or the AAI Subcontractors failing to fully and properly perform its obligations under the Contract relating to the provision of an integrated control system;

r.  Otherwise AAI and/or the AAI Subcontractors failing to fully and properly provide engineering, design, procurement, testing fabrication technical expertise and know how, and on-site management services in accordance with the requirements of the Contract, applicable codes and industry standards.

38.  AAI and the AAI Subcontractors breached their duties owed to O'Neal and were grossly negligent, negligent, willful and/or wanton in one or more of the following: (a) in that they failed to provide design documents which met industry standard and that were such that a reasonably competent engineer would provide; and (b) in failing to properly correct errors in a timely manner.

39.  O'Neal has provided the affidavit of Leroy Blanchard, P.E. as further support of its claims.

40.  As a direct and proximate result of the foregoing, O'Neal has been damaged and has expended substantial sums, in excess of $1,000,000, to correct such deficiencies.

41.    O'Neal is entitled to judgment against AAI and the AAI Subcontractors, jointly and severally, for all costs and expenses incurred as a result of its negligence, carelessness, gross negligence and willful and wanton conduct.

## FOR A SECOND CAUSE OF ACTION
### *(Breach of Contract—AAI)*

42.    O'Neal incorporates its allegations of Paragraphs 1 through 41 above, as if fully repeated herein.

43.    As set forth more fully above, AAI entered into a written contract wherein it agreed to provide, and provided, engineering services to O'Neal in connection with the Project.

44.    AAI breached the Contract in numerous respects including, but not limited to, the following:

a.    AAI failing to design, specify and/or provide compressors complying with applicable requirements of the Contract;

b.    AAI failing to properly identify deficiencies in compressors, compressor components, mechanical seals, control systems, oil coolers and related equipment specified, designed, procured, tested, commissioned and furnished by AAI;

c.    AAI failing to properly repair the above-listed deficiencies existing in compressors furnished by AAI;

d.    AAI failing to complete and/or abandoning its obligations under the Contract and as design agent relating to the provision of compressors and related components fully complying with the requirements of the Contract and/or applicable codes;

e.    AAI failing to design, specify, procure and/or furnish heat exchangers complying with requirements of the Contract and/or applicable codes;

f.  AAI failing to undertake reasonable, customary and necessary quality control measures to assure that heat exchangers designed, specified, procured and furnished by AAI included proper and adequate welds, were properly constructed and/or fabricated and complied with applicable code requirements;

g.  AAI failing to conduct inspections of equipment during fabrication to ensure code compliance;

h.  AAI failing to properly determine the design loading requirements needed to determine the maximum allowable working pressure ("MAWP") for heat exchangers, to identify all over-pressure scenarios together with the method of over-pressure protection used to mitigate each scenario and to properly design over-pressure protection for heat exchangers complying with the requirements of the Contract and/or applicable codes;

i.  AAI failing to properly and adequately design heat exchangers in compliance with applicable industry standards for corrosion allowance and customary pressure drops;

j.  AAI failing to provide equipment with pressure drops as represented during the design of said equipment;

k.  AAI failing to properly specify materials of construction for heat exchangers;

l.  AAI failing to accurately represent the operational and/or performance capabilities of heat exchangers designed, procured and furnished by AAI;

m.  AAI failing to properly design, engineer, procure and furnish properly sized equipment and/or systems including, but not limited to, various pumps, valves and other parts furnished to the LNG Project;

n. AAI failing to properly design and specify safety relief system(s) on certain equipment provided by AAI to comply with applicable requirements of the Contract and applicable code requirements;

o. AAI failing to design and specify safety relief system(s) on certain equipment provided by AAI so that the requirements of ASME Code Section VIII and UG-140 requirements were met;

p. AAI failing to properly design, specify, engineer, procure and furnish equipment and/or systems complying with applicable life/safety requirements;

q. AAI failing to fully and properly perform its obligations under the Contract relating to the provision of an integrated control system;

r. Otherwise AAI failing to fully and properly provide engineering, design, procurement, testing fabrication technical expertise and know how, and on-site management services in accordance with the requirements of the Contract, applicable codes and industry standards.

45.    AAI's breaches of the Contract and failures to comply with its contractual obligations have caused O'Neal to incur damages exceeding $1 million, as to be determined by the finder of fact.

**FOR A THIRD CAUSE OF ACTION**
*(Breach of Express Warranties—AAI)*

46.    O'Neal incorporates its allegations of Paragraphs 1 through 45 above, as if fully repeated herein.

47.    As set forth more fully above, AAI undertook to engineer, design, inspect, supervise and/or administer preparation of plans, drawings, and specifications for certain equipment and/or systems installed at the LNG Project.

48.     AAI expressly warranted the sufficiency of its designs, drawings, plans and specifications.

49.     O'Neal reasonably relied upon the actions of AAI in performing its work and providing its engineering and related services.

50.     AAI warranted the sufficiency of its designs and specifications for their proposed purposes, as well as warranting the performance of services provided in connection with the LNG Project.

51.     O'Neal reasonably relied upon the warranty and has been damaged by AAI's breaches of its warranties, as set forth more fully above.

52.     O'Neal is entitled therefore to judgment against AAI for all damages incurred as a result of AAI's breaches of its express warranties, which exceed $1 million.

## FOR A FOURTH CAUSE OF ACTION
### (Breach of Implied Warranties—All Defendants)

53.     O'Neal incorporates its allegations of Paragraphs 1 through 52 above, as if fully repeated herein.

54.     As set forth more fully above, AAI, Fisher and AAESI undertook to engineer, prepare design documents for the LNG Project including providing plans, drawings, and specifications for certain equipment and/or systems installed at the LNG Project.

55.     O'Neal reasonably relied upon the work of AAI and the AAI Subcontractors.

56.     AAI, Fisher and AAESI impliedly warranted the sufficiency of its design documents and services for their proposed purpose, warranted that such design documents were adequate and, warranted that such design documents were constructable and complete.

57.    AAI, Tretter, JCI and AAESI impliedly warranted that its equipment provided would pass without objection in the trade and would be fit for the ordinary purpose for which the equipment was to be used.

58.    AAI, Tretter, JCI and AAESI are merchants within the meaning of S.C. Code Ann. § 36-2-314.

59.    The equipment furnished by AAI, Tretter, JCI and/or AAESI was not of average quality and was not fit for its ordinary purpose.

60.    AAI, Tretter, JCI and AAESI knew or had reason to know of the particular purpose for which they furnished equipment to the LNG Project, and therefore, impliedly warranted that their equipment would be fit for its intended purpose.

61.    The equipment furnished by AAI, Tretter, JCI and AAESI was not fit for the particular purpose for which it was intended.

62.    O'Neal reasonably relied upon such implied warranties of Defendants and has been damaged by Defendants' breaches of such warranties, as set forth more fully above.

63.    O'Neal is entitled to judgment against Defendants, jointly and severally, for all damages incurred as a result of Defendants' breaches of their implied warranties, which exceed $1 million.

WHEREFORE, O'Neal prays for judgment against Defendants as follows:

A.  That O'Neal be awarded judgment for its actual, consequential and punitive

    damages for Defendants' negligence and/or gross negligence, as alleged in its First

    Cause of Action;

B.  That O'Neal be awarded judgment for its actual and consequential damages against

    AAI as set forth in its Second Cause of Action;

C.  That O'Neal be awarded judgment for its actual and consequential damages for

    AAI's breaches of warranties as alleged in its Third Cause of Action;

D.  That O'Neal be awarded judgment for its actual and consequential damages for

    Defendants' breaches of warranties as set forth in its Fourth Cause of Action;

E.  For such other and further relief as this Court may deem just and proper.

Respectfully Submitted,

/S/ N. Ward Lambert_____
N. Ward Lambert, Fed. Id No. 5246
Wesley B. Lambert, Fed. Id. No. 11990
HARPER, LAMBERT & BROWN, P.A.
P.O. Box 908
Greenville, SC 29602
(864) 235-5535
(864) 235-6866 (fax)
wlambert@hlblegal.com
weslambert@hlblegal.com

*Attorneys for Plaintiff, O'Neal Constructors, LLC.*

October 13, 2017
Greenville, South Carolina